[Crim. No. 61.   Second Appellate District.—August 17, 1907.]

### Ex Parte J. L. ELAM on Habeas Corpus.

CONSTITUTIONAL LAW—ACT TO PREVENT WASTE FROM ARTESIAN WELLS. The act of March 6, 1907 (Stats. 1907, p. 127), entitled "An Act to prevent the waste and flow of water from artesian wells, and prescribing penalties therefor, and defining waste and artesian wells," and declaring such waste a "nuisance," is not violative

of the fourteenth amendment of the constitution of the United States, nor of any provision of the state constitution.

ID.—PUBLIC OWNERSHIP IN ARTESIAN BELT—PUBLIC NUISANCE—POLICE POWER.—The ownership of water in an artesian belt is in that portion of the public who may own the surface of the soil therein, and is subject to a reasonable use only by an owner interested therein. Whenever a land owner exceeds a reasonable use, and wastes the water, he obstructs the free enjoyment of the property of others, and commits a public nuisance. Legislation in relation thereto affects the public welfare, and is referable to the police power of the state.

ID.—DUE PROCESS OF LAW INAPPLICABLE.—Where the exercise of the police power is applicable, the provisions of the constitution declaring that property shall not be taken without due process of law is inapplicable.

ID.—SPECIAL PRIVILEGES—POWER OF COURTS.—If special privileges are granted in the exercise of the police power, the courts may permit the showing of matter *dehors* the statute to show it; but the courts will not interfere except where the case be plain that needless oppression is worked and constitutional rights invaded. *Held*, that the record shows no special privileges, nor any discrimination as to the class of persons who may violate the law.

ID.—POWER OF LEGISLATURE—RESTRICTIONS TO PROTECT PUBLIC PROPERTY.—The legislature has the power to determine what reasonable restrictions are necessary for the protection of public property.

ID.—POWER TO CLASSIFY—UNIFORM OPERATION OF LAW.—The legislature has the power, in legislation, to make a classification based upon a natural distinction. Distinct legislation is required peculiar to those whose lands are so situated with reference to the artesian supply, that a natural flow results from penetrating into the subterranean reservoir; and it is sufficient that the act in question operates uniformly upon every one owning lands upon which is located an artesian well of the kind specified in the act.

ID.—POWER TO PROTECT PROPAGATION OF FISH—BENEFICIAL USE OF WATER.—The legislature has power to protect the propagation of fish as a legitimate and beneficial use of water, and may permit the maintenance of a pond for that purpose from the flow of an artesian well.

ID.—PRESUMPTION IN FAVOR OF VALIDITY OF STATUTE.—Every presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt.

APPLICATION for writ of *habeas corpus* to the sheriff of Los Angeles County.

The facts are stated in the opinion of the court.

G. P. Adams, for Petitioner.

J. D. Fredericks, District Attorney of Los Angeles County, and H. S. G. McCartney, Deputy District Attorney, for Respondent.

ALLEN, P. J.—This is an application for a writ of *habeas corpus* presented by petitioner, who alleges that he is restrained of his liberty under a commitment issued upon default in payment of a fine assessed against him for a violation of the act of the legislature approved March 6, 1907 (Stats. 1907, p. 122), entitled: "An Act to prevent the waste and flow of water from artesian wells, and prescribing penalties therefor, and defining waste and artesian wells."

It is petitioner's contention that this statute is violative of the constitution of the United States and of the constitution of the state of California, and in conflict with the general laws. Section 1 of the act under consideration provides that an artesian well which is not capped or provided with mechanical appliances for arresting the flow of water therefrom is a nuisance, and the owner of the land upon which the same is situated is declared guilty of maintaining a nuisance if he suffers it to remain so uncapped or unprovided with mechanical appliances for arresting the flow, and any person maintaining such nuisance, or causing or permitting water to unnecessarily flow from such well, or to go to waste, is guilty of a misdemeanor. By section 2, an artesian well is defined to be a artificial hole made in the ground through which water naturally flows from subterranean sources to the surface of the ground. By section 3 waste is defined to be the causing, suffering, or permitting the flow from an artesian well to run into any bay, pond, or channel, unless used thereafter for the beneficial purposes of irrigation of land or domestic use, or into any street, road, or highway, or upon public land, unless it be used for the irrigation thereof or for domestic use or the propagation of fish. It is further provided that when water is run upon land for irrigation purposes, if more than ten per cent thereof be allowed to escape therefrom, the same shall constitute waste. Section 5 pro-

vides a penalty for the violation of any of the provisions of the act.

The first point made by petitioner—which is that the act is violative of the fourteenth amendment of the constitution of the United States, which provides that no state shall "deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law," and of article I, section 1 of the constitution of this state, which provides that "all men are by nature free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property," and of section 13, article I, which provides that no person shall be "deprived of life, liberty, or property without due process of law"—seems to have been met and demonstrated to be untenable by the supreme court of the United States in the case of *Ohio Oil Co.* v. *State of Indiana,* 177 U. S. 190, [20 Sup. Ct. Rep. 576]. By that case it is established that water, oil, gas, and all fugitive substances held in their natural subterranean reservoirs are exceptions to the general rule establishing absolute ownership in the proprietor of the surface of all that lies underneath; that these minerals being migratory in their nature, having no fixed situs, are a part of the soil only so long as they are on or in it, but after they escape and go to other lands the title of the former owner is gone; that it follows, therefore, that no one owner of the surface of the earth within the area beneath which these minerals move can exercise his right to extract from the common reservoir in which the supply is held without diminishing the source of supply as to which all other owners of the surface must exercise their rights; that in consequence of the nature of the deposits, of their transmissibility, of their interdependence, of the rights of all and of the public at large, the state could lawfully exercise the power to regulate the right of the surface owners among themselves to seek to obtain possession, and to prevent the waste of the products in which all the surface owners within the area wherein they were deposited, as well as the public, had an interest. "No devesting of private property under such a condition can be conceived, because the public are the owners, and the enacting by the state of a law as to the public ownership is but the discharge of the governmental trust resting in the state as

to property of that character." This water, the owner-
ship of which, until actual possession is acquired, being in the
public, or at least that portion of the public who may own
the surface of the soil within the artesian belt, is subject to a
reasonable use only by those interested therein. This reason-
able use is determined in *Katz* v. *Walkinshaw*, 141 Cal. 134,
[99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766], to be the use
of such amount of the subterranean water "as may be nec-
essary for some useful purpose in connection with the land
from which it is taken." . The conditions existing in this
state with reference to the necessity for the conservation of
irrigating waters are most clearly set out in the case last
cited, and the reasons for the rule restricting the use clearly
shown. Whenever a land owner exceeds this reasonable use
he is appropriating to himself that which belongs to others
who are entitled to a like use, and to that extent is obstruct-
ing the free use of property so as to interfere with its com-
fortable enjoyment, and which, by sections 3479 and 3480,
Civil Code, is declared to be a public nuisance. Whatever
right one has, even in his own, is subject to that established
principle that his use shall not be injurious to the rights of
others, or of the general public. This act, therefore, relates
to waters, the right to the use of which is common to a large
portion of the community, and affects the general public
right. Legislation in relation thereto affects the public wel-
fare, and the right to legislate in regard to its use and con-
servation is referable to the police power of the state, which
is declared in *Ex parte Whitwell*, 98 Cal. 78, [35 Am. St.
Rep. 152, 32 Pac. 870], to be "the power to make laws to
secure the comfort, convenience, peace and health of the com-
munity." "The police power, deriving its existence from the
rule that the safety of the people is the supreme law, justi-
fies legislation upon matters pertaining to the public wel-
fare, the public health, or the public morals." (*Ex parte
Drexel*, 147 Cal. 766, [82 Pac. 429].) It is settled law that
all property is held subject to the exercise of police power,
and that provisions of the constitution declaring that property
shall not be taken without due process of law have no appli-
cation in such cases. (*Odd Fellows' Cem. Assn.* v. *San Fran-
cisco*, 140 Cal. 230, [73 Pac. 987].)

It is further contended by petitioner that the act violates
section 21, article I, of the state constitution, which provides

that "no special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature, nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens"; and he endeavors to demonstrate this proposition by the assumption that the surface owners are not prohibited by this act from extracting from this common source of supply any quantity thereof by means of pumps, that no attempt is made to restrict the use after the same is so pumped, and that the waste of such water so pumped is not violative of the act, and illustrates the claimed distinction by the statement that certain gun clubs within the arid region are pumping large quantities of this subterranean water, by means of which duck ponds are filled and maintained, while other gun clubs whose ponds are fed by artesian wells are restricted in the use of the flow therefrom. It may be conceded that the courts have recognized the right of gun clubs to practically create a monopoly in wild game over large areas of land and have protected them in a so-called private proprietorship and limited dominion over such portions of the common property of the people of the state as they may induce to stay upon such preserves by feeding them and maintaining ponds therein. It may also be conceded that an exclusive right to hunt upon such preserves has also been held to be a species of property, and injunctions have been issued to prevent interference with the full exercise of such rights. (*Kellogg* v. *Kings*, 114 Cal. 378, [55 Am. St. Rep. 74, 46 Pac. 166].) But, while the maintenance of such duck ponds no doubt contributes greatly to the enjoyment of the owner of the hunting privilege, it will scarcely be contended that this is a use of the water which is beneficial to the land. Neither does it follow that because the courts have recognized such exclusive hunting privileges they must support the owners thereof in an encroachment upon another more necessary common right of the public, that of the conservation of the subterranean waters of the state for domestic uses and purposes of irrigation. We are not to be understood in thus meeting the reasons of petitioner's argument, as admitting that there is anything in the language of the act in question that would affect a gun club any more than an individual, association or incorporation. That one may show matters *dehors* an ordinance which is referable to the police

power that such ordinance by reason of particular facts and circumstances is unreasonable and oppressive as to him, is determined in *Re Smith,* 143 Cal. 370, [77 Pac. 180]. No reason suggests itself why such right may not be recognized when the state has sought to exercise the same power; and while courts may to a degree supervise such power, "they will not interfere except where the case be plain that needless oppression is worked and constitutional rights invaded." (*In re Smith,* 143 Cal. 370, [77 Pac. 180].) Nothing appears upon the face of the act, or in the record on this application, from which it can be said there is any discrimination as to the class of persons who may violate the provisions of the law. No special immunities or privileges are granted to any club, clubs, person or persons. That some clubs may maintain their ponds by pumping, while others, more fortunate, have theirs maintained by artesian wells or running streams, or tide water from the ocean, in no way affects the question. As well might it be said that legislative action affecting tide lands created special privileges or immunities because the duck ponds of the clubs relying upon tide waters might be affected thereby.

As we have before attempted to show, no surface owner possesses the right to extract the subterranean water in excess of a reasonable and beneficial use upon the land from which it is extracted. Any additional extraction is not in the exercise of a right, if by such exercise the rights of others are injuriously affected. Nor can an appropriator take more water than he can beneficially use. Hence, it follows that no discrimination is made between parties entitled to the exercise of a common right. Under the act in question, all may exercise their full legal right with reference to this water. As to the right to use any portion of that which belongs to the public, legislative control is applicable, and if, as a matter of fact, public rights are abused by the improper extraction of this public water by means of pumps, it is presumable that the legislature, in the exercise of its proper functions, will in due time arrest such waste. The game of the state belongs to the people in their collective capacity in a more general way than does the subterranean water within an artesian belt, yet no one will question the right of the state to restrict the manner in which fish may be taken from the water, whereby it is made a public offense to use a seine, while

those who adopt the hook and line may take without offense. There is no special privilege or immunity granted to the man with the hook and line. The right to take at all, or in any particular season, either of game or any other thing public in its character, comes from the state and is subject to its regulation and control, and it is for the legislature to say what reasonable restrictions are necessary for the protection of this public property. (*Ex parte Kennke*, 136 Cal. 527, [89 Am. St. Rep. 177, 69 Pac. 261].)

It is further contended that this act is violative of subdivision 33, section 25, article IV, of the state constitution, which provides that "the legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . in all other cases where a general law can be made applicable"; and also violates section 11, article I, which provides that "all laws of a general nature shall have a uniform operation." Assuming all that the petitioner claims for the act as to its establishment of a class, nevertheless, "the true practical limitation of the legislative power to classify is that the classification shall be based upon some apparent natural reason, some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them." (*Nichols* v. *Walter*, 37 Minn. 272, [33 N. W. 800].) "A law which operates only upon a class of individuals is none the less a general law if the individuals to whom it is applicable constitute a class which requires legislation peculiar to itself, in the matter covered by the general law, and which is germane to the purpose of the law." (*People* v. *Central Pac. R. Co.*, 105 Cal. 576, [38 Pac. 905].) It is obvious that different legislation is required peculiar to those whose lands are so situated with reference to the artesian supply that a natural flow results from a penetration into the subterranean reservoir. The distinction between wells having a natural flow and those not so constituted is natural, and reasonably indicates the necessity or propriety of legislation restricting the former class. The right to so legislate when the reason exists is determined in *City of Pasadena* v. *Stimson*, 91 Cal. 251, [27 Pac. 604] , *People* v. *Central Pac. R. Co.*, 105 Cal. 576, [38 Pac. 905], and *People* v. *Mullender*, 132 Cal. 221, [64 Pac. 299]. This act operates uniformly

upon everyone owning lands upon which is located an artesian well of the kind and character specified in the act. "Section 11, Art. I, of the State Constitution, requiring all laws of a general nature to have a uniform operation, is satisfied when the law operates uniformly upon all persons standing in the same category, and upon rights and things standing in the same relation." (*Wigmore* v. *Buell,* 122 Cal. 144, [54 Pac. 600].)

It is further contended that a discrimination exists because of the provision which permits the maintenance of ponds for the propagation of fish, as distinguished from the maintenance of ponds for other purposes. The propagation of fish has always been recognized as a legitimate pursuit and as an effort to increase the food supply of the world, and the use of water therefor a beneficial use, which, like the use for irrigation or domestic purposes, is declared by the act to be the highest use to which this natural element may be applied. The legislature has the right to determine what uses are superior in kind, and to protect the same, and it is within its province to determine that certain uses of this public property are of a higher character and superior in right to other uses. This right is subject only to the constitutional limitations against discriminations. Having so determined, and no just criticism being applicable thereto, the value of such uses must be held to be established. We are not called upon in this case to determine the legislative right to regulate or protect the extraction of this subterranean water for transportation or sale by those owners of the surface whereon the use of water is not required for those higher uses, nor of prescriptive rights asserted or claimed in such instances, but simply to hold that for the uses which have been determined subordinate the great subterranean water supply may not be applied to the detriment of the higher uses, and that legislation directed to the conservatism of such water, as in this act, is not prohibited by any constitutional provision. "Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule." (*In re Spencer,* 149 Cal. 400, [117

6 Cal. App.—16

Am. St. Rep. 137, 86 Pac. 896] ; *Sinking Fund Cases,* 99 U. S. 718.)

Writ denied.

Shaw, J., and Taggart, J., concurred.