[No. 2046. September 13, 1917.]

ECCLES, Artesian Well Sup'r., v. DITTO et al.

[Rehearing Denied October 3, 1917.]

SYLABUS BY THE COURT.

1.  Sections 265, 266, 267, and 268, Code 1915, which provide for the summary abatement of a public nuisance, viz., an artesian well which has been permitted by the owner to become and remain out of repair so that water is unnecessarily permitted to flow to waste, by the well supervisor created by the act, by entering upon the premises and repairing or plugging the well, is a valid exercise of the police power of the state, and is not violative of either the Constitution of the United States or of this statee.          P. 240

2.  Under such statute the lien imposed upon the well and land of the owner for the expense of such repair or plugging, where such well is permitted to become and remain out of repair, is not upon the theory of benefit to the owner, but is taxed as the cost and expense of abating a nuisance, and is fully justified by the authorities.          P. 244

3.  Within reasonable limits there is no question but that the Legislature has the power to declare certain uses of property a nuisance, and such use thereupon becomes a nuisance per se.          P. 244

4.  In the exercise of the police power by the state, it may by statute provide that the cost of abating a nuisance shall

be assessed against the property of the owner by whom it is maintained.                                                P. 245

5. Where a public officer is the representative of the public in that regard, and a public nuisance is maintained which injures the public, so represented by him, such officer may, where authorized by statute, enter upon the lands and premises of the party guilty of maintaining such nuisance, provided he can do so in a peaceable manner, and remove or abate the nuisance, doing no greater injury than is necessary to accomplish the abatement of the nuisance.        P. 247

6. While the act in question authorized the well supervisor to repair or plug the well, if necessary, it is his duty to adopt the least expensive and most efficacious method, and if such well can be plugged at slight expense, while to repair it would entail a large expense, it is his duty to plug the well, as the public is interested only in preventing the waste of water.                                                 P. 247

7. Where no attempt is made upon the trial of an action to foreclose a lien to show what the cost of plugging would have been, the court will assume that the well supervisor properly undertook to repair the well, and that such course was proper and necessary.                                      P. 247

Appeal from District Court, Chaves County; McClure, Judge.

Action by W. R. Eccles, artesian well supervisor of Chaves County, N. M., to foreclose a lien against land of E. P. and C. G. Ditto. Judgment for plaintiff, with direction for foreclosure of lien, and defendants appeal. Affirmed.

L. O. Fullen and W. A. Dunn, both of Roswell, for appellants.

The statute in question is unconstitutional.

Norwood v. Baker, 172 U. S. 269; Chicago, etc., Co. v. Chicago, 166 U. S. 226; Lathrop v. City of Racine, (Wis.)

97 N. W. 192; Hutcheson v. Storrie (Tex. Sup.) 51 S. W. 848; White v. Tacoma, 109 Fed. 32.

Where private lands are made to bear the cost of public improvement, the statute is unconstitutional, unless the property is correspondingly benefited, and a taking for other than a public use is unwarranted.

Hammett v. Phila,. 3 Am. R. 615; Gaylord v. San. Dist. of Chicago, 63 L. R. A. 582, 98 Am. St. R. 235; Chicago & E. R. Co. v. Keith, 60 L. R. A. 525.

Power of state to sumarily abate a nuisance must be reasonable and the means employed not oppressive and no expense not necessary to abatement may be taxed against person maintaining it.

29 Cyc. 1218; Rude v. St. Marie (Wis.), 99 N. W. 460; Eckhardt v. Buffalo, 46 N. Y. Suppl. 204; Lawton v. Steele, 152 U. S. 133, 38 L. Ed. 385.

K. K. Scott, C. O. Thompson and R. C. Dow, all of Roswell, for appellees.

Presumption is in favor of constitutionality of a statute.

People v. William Henning Co., 200 Ill. 554, 103 N. 530, 49 L. R. A. (N. S.) 1206; State v. Roby, 142 Ind. 168, 41 N. E. 145, 51 A. S. R. 174 and note, 33 L. R. A. 213; New Orleans v. Robira, 42 La. Ann. 1098, 8 So. 402, 11 L. R. A. 141; Foster v. Essex Bank, 16 Mass. 245, 8 Am. Dec. 135; People v. Smith, 108 Mich 527, 66 N. W. 382, 62 A. S. R. 715 and note 32 L. R. A. 853; State v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L. R. A. (N. S.) 327; Coffman v. Bank of Kentucky, 40 Miss. 29, 90 Am. Dec. 311; Deal v. Miss. County, 107 Mo. 464, 18 S. W. 24, 14 L. R. A. 622; Shohoney v. Qunicy, Etc., Ry. Co., 231 Mo. 131, 132 S. W. 1059, Ann. Cas. 1912A 1143; People v. West, 106 N. Y. 293, 12 N. E. 610, 60 Am. Rep. 452; Bronson v. Oberlin, 41 Ohio St. 476, 52 Am. Rep. 90; Russ v. Com., 210 Pa. St. 544, 60 Atl. 169, 105 M. S. R. 825, 1 L. R. A. (N. S.) 409; Fletcher v. Peck, 6

Cranch 87, 3 U. S. (L. Ed.) 162; Boston v. Cummins, 16 Ga. 102, 60 Am. Dec. 717; Hawthorne v. People, 109 Ill. 302, 50 Am. Rep. 610.

Nature and scope of police power

6 R. C. L. Sec. 182; 6 R. C. L. Sec. 198; Jacobson v. Mass. 197 U. S. 11; Downs v. Swann, 111 Md. 53, 134 A. S. R. 586, 23 L. R. A. (N. S.) 739; State v. Gurry, 121 Md. 534, 47 L. R. A. (N. S.) 1087; 6 R. C. L. Sec. 186; Re Morgan, 26 Colo. 415, 58 Pac. 1071, 77 A. S. R. 269, 47 L. R. A. 52; Daugherty v. Thomas, 174 Mich. 371, 140 N. W. 615, 45 L. R. A. (N. S.) 699; In Matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636; 6 R. C. L. Sec. 206; State v. Shearman, 18 Wyo. 169, 105 Pac. 299, Ann. Cas. 1912C 819, 27 L. R. A. (N. S.) 898; Townsend v. State, 147 Ind. 624, 37 L. R. A. 294; State v. Ohio Oil Co., 177 U. S. 190; Hathorn v. Natural Carbonic Gas Co., 194 N. Y. 326, 87 N. E. 504, 128 A. S. R. 555, 23 L. R. A. (N. S.) 436.

Laws are not rendered unconstituional because they impose burdens on persons or property.

6 R. C. L. Sec. 221; Indiana Ry. Co. v. Calvert, 168 Ind. 321, 80 N. E. 961, 11 Ann. Cas. 635, 10 L. R. A. (N. S.) 780; State v. Normand, 76 N. H. 541, Ann. Cas. 1913 E. 996; Health Dept. v. Rector of Trinity Church, 145 N. Y. 32, 27 L. R. A. 710; Lemius v. Young, 211 U. S. 489; Grainger v Douglas Parks Jockey Club, 148 Fed. 513, 8 Ann. Cas. 997; Chicago, B. & Q. Ry. Co. v. State, 47 Neb. 549, 66 N. W. 624, 53 A. S. R. 557, 41 L. R. A. 481; California Reduction Co. v. Sanitary Reduction Works, 199 U. S. 306; State v. Canal & C. R. Co., 50 La. Ann. 1189, 24 So. 365, 56 L. R. A. 287; Ives v. South Buff Ry. Co., 201 N. Y. 271, 94 N. E. 431, Ann. Cas. 1912B 156, 34 L. R. A. (N. S.) 162; Stephens v. Central of Ga. Ry. Co., 138 Ga. 625, 75 S. E. 1041, Ann. Cas. 1913E 609, 42 L. R. A. (N. S. 541.

## OPINION OF THE COURT.

ROBERTS, J.   Appellee, as artesian well supervisor of

Chaves county, N. M., instituted this action in the court below to foreclose a lien on certain lands of E. P. and C. G. Ditto, appellants, on account of money expended for labor and materials furnished and used in repairing an artesian well owned by the Dittos, which repairs were made by appellee in his official capacity as such well supervisor.

It is admitted by the pleadings that the appellants suffered the well in question to become and remain out of repair, so that they were unable to control the flow of water therefrom, and that the waters flowing therefrom were permitted to go to waste; that they were duly notified to repair the well and failed to do so, and that the appellee, in his official capacity, undertook to make the repairs; that a lien was filed in due season against the well and lands on which the same was situate; and that this action was instituted after the expiration of the time allowed for the appellants to pay off and discharge the lien.

The trial court found that the allegations of plaintiff's complaint were sustained by the evidence introduced; that the allegation contained in defendants' answer of new matter that plaintiff was guilty of gross negligence in doing the work, in that he negligenlty employed inadequate machinery and inexperienced men to do the work, was not sustained; that the plaintiff employed experienced men and proper machinery to do the work; that the plaintiff expended the amount alleged in his complaint in the work of repairing the well in question on account of labor and materials furnished in doing the work thereon; that when the plaintiff entered upon the work of repair, the well flowed from 1800 to 1900 gallons per minute, none of which flow could be controlled by the appliances provided, and with which the well was equipped before the repairs by plaintiff; that after plaintiff had finished his work of repair on the well 1500 gallons of flow therefrom could be controlled by the appliances placed on the well by the plaintiff. The court directed a judgment against the well and lands for the amount of money expended by plaintiff in making the repairs on the well, and decreed a fore-

closure of the lien. The court found that the mortgage of defendant O. A. Will was a prior and first lien on the lands in question, and directed a foreclosure of the lien and sale of the lands subject to said mortgage.

The sole question raised by appellants on this appeal is the constitutionality of sections 265, 266, 267, and 268, Code 1915.

The evidence introduced upon the trial is not incorporated in the transcript; hence we can consider only the findings made by the court which must be accepted as conclusive. The ninth, tenth, and eleventh findings are as follows:

"(9)     That at the time said repairs were begun, there was flowing continuously from said well approximately 1,800 or 1,900 gallons of water per minute, none of which was under control, and none of which could be shut off or controlled by the appliances which the defendants had provided for controlling the shutting off the waters of said well.

"(10)     That when said repairs were completed about 1,500 gallons per minute of the flow of water from said well were under control and about 300 or 400 gallons per minute of water from the same were not under control, and said quantity is not under control at this time, and cannot be placed under control without enormous and unwarranted additional expense or probable destruction of the well.

"(11)     That said firm of Sperry & Lukins in making repairs on said well provided suitable and proper machinery for making the same, employing competent and experienced men and help to operate said machinery in making said repairs; and, while the results of such repairs are not satisfactory and said well is still wasting water which is not controlled to the amount of 300 or 400 gallons per minute, yet the court finds that the machinery and methods adopted and used in the repairing of said well are those commonly and usually used in doing such work, and that there was neither negligence, carelessness, nor want of skill in making said repairs. The evidence in the case discloses that the reparing of artesian wells of the age and in the condition of the one in controversy is always hazardous and uncertain as to results."

[1] No request was made by apellants for a finding as to the cost of plugging the well or as to whether such waste of water could have been entirely prevented by means of plugging. The repairs were made and the lien claimed under the provisions of chapter 6, Code 1915. The first sec-

tion of the chapter defines an artesian well, and the second section (section 247, Code 1915) reads as follows:

"Any artesian well that is not tightly and securely cased, capped, and furnished with such mechanical appliances at the well as will readily and effectively arrest and prevent the entire flow of the water from such well either above or below the earth's surface is hereby declared to be a public nuisance. The owner, tenant or occupant of the land upon which such well is situated who causes, permits or suffers such public nuisance, or suffers or permits it to remain or continue, shall be punished by a fine not to exceed one hundred dollars, at the discretion of the court trying the case, and each day shall constitute a separate offense."

The chapter defines what shall constitute waste of water, and contains comprehensive provisions regulating the manner of drilling the wells and their operation. A county artesian well board is created for each county in which there are located such wells, and also an artesian well supervisor. Sections 265, 266, 267, and 268, Code 1915, read as follows:

"Sec. 265. Any person owning any land or owning any interest in any land upon which is situated an artesian well or reservoir, or owning an artesian well or reservoir or any interest in any artesian well or reservoir who causes, suffers or permits the water unnecessarily to flow from such well, or to go to waste, or waste, flow or seep from such reservoir, and who shall fail to stop, or to make diligent efforts t o have such flow or waste stopped within thirty days after being notified in writing by the artesian well superior, such diligence consisting in securing the necessary material and men, and some well contractor who controls a well machine capable of doing the work, said capability to be determined by the artesian well supervisor by making whatever repairs upon said well or reservoir as are necessary to stop the flow of waste, shall be deemed to have refused to take such action to prevent waste, and the artesian well supervisor is thereupon authorized as required to cause the necessary repair to be made, or take whatever steps necessary to stop the flow of waste, plugging said well, if necessary, at any point which should be effective to stop said flow or waste, paying the expenses of such repairs or other work, including material or labor, out of the artesian well fund in the hands of the county treasurer resulting from fines from the violation of the provisions of this chapter. Provided, that where the conditions justify such action, the board of county commissioners may, upon receipt of petition presented by the artesian well board and wherein shall be stated the kind and amount of repair

work contemplated as well as its necessity, transfer from any fund or funds which may at the time be available for the purpose to the credit of the artesian well funds, a sufficient amount to cover the cost of such repairs, and when any such amount shall have been collected as is provided by this chapter, it shall be paid over to the county treasurer, together with a legal rate of interest thereon, and by him credited to the original fund from which it was drawn.

"Sec. 266. The expenses incurred for the repairs of work aforesaid shall become a lien on the land, where such well or reservoir are situated, and upon such well or reservoir, and the artesian well supervisor within twenty days after the completion of said repairs or work upon any well or reservoir, shall file for record with the county clerk of the county in which said land, well or reservoir is situated, a statement of the expenses or the amount thereof, the name of the owner or the reputed owner of the land, well or reservoir, and a description of the land, well or reservoir, to be charged with the lien, sufficient for the identification, which claim must be verified by the oath of the artesian well supervisor.

"Sec. 267. The county clerk must record the claim of lien in a book kept by him for the recording of liens generally and his fee for recording same shall be included in and be a part of said lien.

"Sec. 268. If the said lien is not paid and discharged within ninety days from the date of its filing with the county clerk, the artesian well supervisor shall in his official capacity and name institute suit in the district court for the foreclosure and the procedure therefor shall be the same as provided by law for the sale of real estate under foreclosure of mortgage."

Appellants contend that these sections are unconstitutional and in conflict with the Fourteenth Amendment to the Constitution of the United States, and section 18 of article 2 of the state Constitution, which provides that no person shall be deprived of property without due process of law; also that said sections are in conflict with the Fifth Amendment to the Constitution of the United States, and of section 20 of article 2 of the state Constitution, which provides that private property shall not be taken for public use without just compensation.

Appellants' first point is, quoting from their brief:

"The power of the state to enter private lands and make improvements thereon, or to grant authority for such action, can only be exercised where the public welfare so requires; and if the cost of making such improvements is to be assessed against the property invaded, the benefits accruing to the

owner must equal or exceed the burden thereby imposed. And where the state prescribes proceedings to charge private lands with such a burden without providing for proportional benefits to the owner, such proceedings contemplate depriving the owner of his property without due process of law, and therefore void, as in conflict with the state and federal Constitutions."

And under their second point the same proposition is stated in another form. From a reading of the statute and the point stated it will be observed that appellants misconceive the purpose and object sought to be obtained by the enactment of the statute in question. The making of the repairs or the preventing of waste is not for the benefit of the owner of the land upon which the well is located which may be wasting water, but is for the purpose of abating a public nuisance. The statute in question was apparently copied from the state of Kansas, and appears in the General Statutes of Kansas of 1915 as sections 5674 to 5702. Practically all of the states of the Union which have artesian wells have regulated the use of such wells, their repairs, etc. In California the statute makes it a penal offense for the owner of an artesian well to permit the water therefrom to go to waste. This statute was upheld by the Court of Appeals in the case of Ex Parte Elam, 3 Cal. App. 233, 91 Pac. 811. Our statute goes further, however, and authorizes the well supervisor to make the repairs or plug the well in case the owner fails to do so after notice. Evidently the Legislature was of the opinion that this provision was necessary in order to conserve the artesian waters of the state for the purpose of irrigation and other beneficial uses. That it was competent for it to so legislate as to conserve these natural resources is well established by the adjudicated cases. In support of this we have only to refer to the case of Ohio Oil Co. v. State of Indiana, 150 Ind. 698, 50 N. E. 1124, affirmed by the Supreme Court of the United States, 177 U. S. 190, 20 Sup Ct. 576, 44 L. Ed. 729. In that case the statute under consideration made it unlawful for any person having possession or control of any natural gas or oil well to allow or permit the flow of gas from any such well to escape into the open air, etc. That statute, as does the

one under consideration here, had quite elaborate provisions for regulating the use of such wells so as to prevent the waste of gas or oil. The Supreme Court of the United States, in an opinion written by Mr. Justice White, upheld the statute as a proper exercise of the police power of the state, and stated that it violated no provision of the Constitution of the United States. See, also, Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160. Most of the states in the Union which have gas and oil producing wells have similar regulations, all of which have been upheld as constitutional exercises of the police power of the states. See Thornton on the Law Relating to Oil and Gas, § 385. In an appendix to this work will be found the statutes of the various states, all of which undertake to prohibit the waste of gas and oil. There are two justifying reasons for the enactment of the statute under consideration by the Legislature of this state, the first being the necessity of using water for irrigation and the limited quantity of water available. The artesian waters in a given district come from the same source, and are obtained by sinking wells to the common basin, thereby enabling the water to find its way to the surface. Necessarily, the waste of water derived from the common source of supply diminishes the amount of water available for legitimate uses, and hence works an injury and a detriment to the general public desiring to make use of such waters. The second reason is that permitting the water to run to waste in large quantities results in the "water logging" of lands, and destroys its productiveness. In the artesian belt of the Pecos Valley, it has been found necessary to construct drains at enormous expense to carry away the waters which find their way to the lower lands. Hence we find ample justification for the legislative act regulating the construction and use of such wells, thereby preventing the unnecessary waste of water.

[2, 3] The lien imposed upon the well and land of the owner who permits a well to become out of repair and waste water is not upon the theory of benefit to the owner,

but is taxed as the cost and expense of abating a nuisance and is, we think, fully justified by the authorities. The act in question declares that an artesian well which is in such condition that water wastes therefrom is a public nuisance, and authorizes its summary abatement by the artesian well supervisors in one of two modes; either by repairing or plugging. The statute declares and defines a new species of public nuisance not known to the common law nor declared to be such by any prior statute. Certainly the Legislature had the power to declare an artesian well used in such a manner as to be a detriment to the public interest and welfare a public nuisance, although not recognized as such at common law. In Wood on Nuisances, (3d Ed.) the author says:

"Within reasonable limits there is no question but that the Legislature has the power to declare certain uses of property a nuisance, and such use thereupon becomes a nuisance per se."

[4] There are, of course, limitations upon the exercise of this power by the Legislature, for if the court could judicially see that a statute was a mere evasion, or was framed for the purpose of individual oppression, it would be set aside as unconstitutional, but not otherwise. Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878, 7 L. R. A. 134, 16 Am. St. Rep. 813. But such does not appear in this statute, for it is plain to be seen that the statute was designed to accomplish a useful purpose and to promote the interests of the state and advance the welfare of the people residing in the artesian belt. Numerous examples are cited by the New York Court of Appeals in the case to which we have last referred of the exercise of the legislative power to declare property held or used in violation of a particular statute a public nuisance, although such possession and use before the statute was lawful.

The principle of law relative to the improvement of property for public benefit wherein the costs of such improvements is assessed upon those benefited thereby stands upon quite a different footing from the law which authorizes the abatement of a nuisance and taxes the expense thereof to the person maintaining the nuisance.

It is the duty of every one to so use his property as to occasion the least possible injury to the public or to others; and, if he permits a nuisance to be maintained upon his property which works a detriment or injury to the public or to others, it is only proper and just that the expense of abating or removing the nuisance should be borne by the individual guilty of its maintenance.   In Joyce on Law of Nuisances, § 381, it is said:

"In the exercise of the police power possessed by the state it may be by statute provided that the cost of abating a nuisance shall be assessed against the property of the owner by whom it is maintained."

In the case of Steelsmith v. Aiken, 14 Pa. Super. Ct. Rep. 226, the right of the adjoining landowner to recover the costs and expense of plugging an oil well was sustained. There the statute authorized the adjoining landowner, after notice to the owner of the well and refusal to plug the well, to recover the expense from the owner of the well.

In the case of County of Los Angeles v. Spencer, 126 Cal. 670, 59 Pac. 202, 77 Am. St. Rep. 217, a similar question was involved under a statute which made certain orchards infected with insects, moths, or other pests public nuisances, and authorized the Horticultural Commission to spray the trees and charge the cost thereof as a lien upon the land.   The court upheld the statute as constitutional, and said that its enforcement in the way prescribed by the statute was not obnoxious to any constitutional inhibition.

In 29 Cyc. 1218, in discussing the question of the abatement of a public nuisance by public authorities, it is said:

"The person responsible for a nuisance may be held liable for the expense of removing or abating it."

And the Legislature may authorize the summary abatement of public nuisance is equally established.

The Legislature has made a wasting artesian well a nuisance per se, and, being a nuisance per se, there was no necessity for any judicial inquiry.   Western & Atlantic R.

R. Co. v. Atlanta, 113 Ga. 537, 38 S'. E. 996, 54 L. R. A. 802.

In Dillon on Municipal Corporations, § 684 (5th Ed.) in speaking of the power of municipal authorities to sum- marily abate nuisances, the author says:

"It is to secure and promote the public health, safety, and convenience that municipal corporations are so generally and so liberally endowed with power to prevent and abate a nui- sance. This authority and its summary exercise may be con- stitutionally conferred on the incorporated place, and it auth- orizes its council to act against that which comes within the legal notion of a nuisance."

And in another section (690) the same author says in speaking of a nuisance per se:

"With reference to the first class it has been held that un- der statutory authority to abate or remove nuisances, the municipality has the power to abate as a nuisance per se any- thing that falls within the legal notion of a nuisance per se, and to do it in a summary manner."

Many authorities are cited sustaining the text.

[5-7] Here we have the well in question declared by legislative authority a public nuisance per se. The well supervisor was required to give the owner of the well 30 days' notice in writing to abate the nuisance. This he did and upon his failure to comply the supervisor was required to abate the nuisance by repairing or plugging the well. Of course, if the well was not out of repair it did not constitute a nuisance, and the well supervisor would have no authority to interfere, and, if he did so, would be liable to respond in damages for his unwarranted action. But it is conceded that the well in question was wasting at least 1900 gallons of water per minute, and that it was out of repair; hence there can be no doubt as to the duty and propriety of the action taken by the well supervisor in undertaking to abate the nuisance.

The act in question is not violative of the constitutional provisions referred to because it authorizes the summary abatement of the nuisance by the well supervisor by repair- ing or plugging the well which is wasting water. It is universally held, we believe, that the exercise of the right

existing at common law to summarily abate a nuisance is not in conflict with a constitutional provision protecting rights in property. Joyce on the Law of Nuisances, § 380.

In the case of Lawton v. Steele, 119 N. Y. 226, 23 N. E. 878, 7 L. R. A. 134, 16 Am. St. Rep. 813, the court said:

"The right of summary abatement of nuisances without judicial process or proceeding was an established principle of the common law long before the adoption of our Constitution, and it has never been supposed that this common-law principle was abrogated by the provision for the protection of life, liberty and property in our state Constitution, although the exercise of the right might result in the destruction of property."

In the same case it is further said:

"The public remedy is ordinarily by indictment for the punishment of the offender, wherein on judgment of conviction the removal or destruction of the thing constituting the nuisance, if physical and tangible may be adjudged, or by bill in equity filed in behalf of the people. But the remedy by judicial prosecution, in rem or in personam, is not, we conceive, exclusive, where the statute in a particular case gives a remedy by summary abatement, and the remedy is appropriate to the object to be accomplished."

Here the Legislature, presumably after due investigation, has determined that the nuisance should be abated in a summary manner, by the public official thereunto empowered, and that the public interest required that such nuisance should be dealt with in the manner prescribed. The act in question does not undertake to authorize the destruction of property, for it only authorizes the repair or plugging of the well. If the well is plugged, as suggested by appellants in their brief, the well is not destroyed, as such plug may afterwards be removed. Thus it will be seen that the act in question does not provide for the destruction of property, but only for the abatement of such use of the property as constitutes the nuisance.

At common law a private individual could abate a nuisance which worked a special injury or hurt to him, and could enter upon the lands or premises of another for such purpose, provided he could do so in a peaceable manner. Joyce on the Law of Nuisances, § 368. And the ex-

ercise of this right by the individual in a summary manner violates no constitutional provision. There is some conflict in the authorities as to whether a private individual may abate a public nuisance, unless he suffers some special injury therefrom, not common to the general public. Upon reasons it would seem that where a public officer is the representative of the public, in that regard, and a public nuisance is maintained which injures the public, so represented by him, such officer may, where authorized by statute, enter upon the lands and premises of the party guilty of maintaining such nuisance, provided he can do so in a peaceable manner, and remove or abate the nuisance, doing no greater injury than is necessary to accomplish the abatement of the nuisance. If the private individual can lawfully abate the nuisance which injures him, the public official representing the public, and being so empowered by statute, can, acting for and on behalf of the public, lawfully exercise the same rights in behalf of all the public, as the private individual can, in the protection of his private rights. Thus it will be seen that in this regard the statute in question violates no constitutional provision.

It is argued by appellants, however, under their third proposition that the power of the state to summarily abate a public nuisance must be reasonably and efficiently exercised; the means employed must not be unduly oppressive on individuals, and no expense not necessary to the abatement of the nuisance may be taxed against the person maintaining it. This may be conceded to be a correct statement of the law.

Applying it to the facts in this case, appellants argue: First, that it was the duty of the well supervisor to have plugged the well, and that he should not have attempted to repair it; second, that having attempted to repair the well, he failed to accomplish the purpose sought, in that he did not entirely suppress the waste of water, admitting, however, that he did control the flow of water to at least 1,500 gallons per minute. The difficulty which confronts appellants under their first contention is their failure to

show the feasibility of stopping the flow of water in the instant case by plugging and the expense which would have been entailed thereby. As we have stated, the evidence is not in the record. From the finding made by the court, apparently no attempt was made to show what the cost of plugging the well would have been or its feasibility. We do not believe that the statute in question contemplates that the well supervisor shall undertake, at great expense, to repair a well so as to contniue the flow for the use of the owner when the waste might be limited at a small expense by plugging the well. The supervisor is the representative of the public, or rather the water consumers of the district. The public has no concern with the question as to whether or not the owner of the land upon which the well is located shall continue to use water therefrom. That is a matter that concerns only the individual. If he received proper notice to place his well in repair and neglects to do so, the public interst demands only the abatement of the nuisance by stopping the waste of water. If this nuisance can be abated, as stated, by plugging the well at a trifling expense, whereas to repair the well would entail a large expense, it is, we believe, the duty of the well supervisor to adopt the least expensive method. But as stated, there is nothing in the record before the court to show what the expense of plugging would have been, or that the result could have been accomplished by the adoption of that method. But the method and means to be adopted to abate the nuisance, under the statute, rest in the discretion of the well supervisor, and in the absence of a showing of gross abuse of such discretion the courts will not interfere.

As to the second question we think appellants are foreclosed by the findings of the trial court. These findings have been heretofore set out, and it will be observed that the court found that the well supervisor used due and proper diligence in all things in the making of the repairs in question, that he adopted the proper course, and that it was impractical to have so repaired the well as to have entirely eliminated the waste of water. This being true,

appellants cannot escape their liability for costs of repair. It is, of course, the duty, under the statute, of the well supervisor to stop the waste of water, but the law' does not demand the impossible; neither would the appellants be liable by prosecution under an indictment for permitting the waste where it was impossible to obviate it.

In view of the findings by the trial court, which are binding here because of the state of the record, appellants are required to respond for the costs and expenses entailed by the repairs made.

For the reasons stated, the judgment must be affirmed; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.