[Crim. No. 3662. In Bank.—November 22, 1933.]

In the Matter of the Application of HAROLD A. MAAS for a Writ of Habeas Corpus.

George P. Adams and West & McKinney for Petitioner.

S. B. Kaufman, District Attorney, W. F. Menton, Assistant District Attorney, and James L. Davis, Deputy District Attorney, for Respondent.

WASTE, C. J.—This is an application for a writ of *habeas corpus* wherein petitioner alleges that he is restrained of his liberty by the sheriff of the county of Orange under a commitment issued upon default in payment of a fine assessed against him for a violation of an ordinance adopted by the board of supervisors of said county, entitled "An ordinance regulating the use of water from pumping wells and to prevent the waste and flow thereof and the defining of waste of such water."

Section 1 of the ordinance under consideration provides that it shall be unlawful for any person, firm, etc., to cause, permit or suffer any water well or wells under the control or management of such person, firm, etc., to be pumped and used in such manner as to cause, suffer or permit the water

to unnecessarily flow therefrom. Section 2 defines a pumping well to be any well from which water is obtained by means of a pump or other mechanical device. Section 3 defines waste to be "the causing, suffering or permitting any water pumped from any well to run into any river, creek, or other natural water course or channel or into any bay or pond (unless used thereafter for the beneficial purpose of irrigation of land or domestic use), or into any street, road or highway, or upon the land of any person, or upon the public lands of the United States, or of the State of California, unless it be used thereon for the beneficial purposes of irrigation thereof, or for domestic use, or the propagation of fish. The use of any water produced from any such well for irrigation of land whenever over five per cent of the water received on such land for such purposes is allowed to escape therefrom, is also hereby declared to be waste within the meaning of this Ordinance; provided, that nothing herein shall prevent the running of water pumped from such wells into an artificial pond, or storage reservoir, for use thereafter for a beneficial use; provided, such beneficial use shall not exceed one-fifth of one miner's inch of water per acre, perpetual flow, but such user of water shall have the right to accumulate the said amount within any period of each year."

Section 4 makes each day's violation of such ordinance a separate offense. Section 5 prescribes the penalty (fine or fine and imprisonment in the county jail) for a violation of such ordinance.

█ It is the petitioner's principal contention that this ordinance represents an invasion of the police power of the state and that it is without the authority and jurisdiction of boards of supervisors to so legislate. In other words, it is the petitioner's theory that all water within the state is the property of the people and that the enactment of legislation with respect thereto is exclusively within the province of the state legislature.

Legislation with respect to water affects the public welfare and the right to legislate in regard to its use and conservation is referable to the police power of the state. (*Ex parte Elam*, 6 Cal. App. 233, 237 [91 Pac. 811].) This does not mean, however, that this phase of the police power is to be exercised exclusively by the state legislature.

Section 11 of article XI of the state Constitution provides that "Any county, city, town or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." This constitutional provision received the attention of this court in *In re Isch*, 174 Cal. 180, 181 [162 Pac. 1026]. It is there declared: "As was said in *Odd Fellows Cem. Assn.* v. *San Francisco*, 140 Cal. 226, 231 [73 Pac. 987], 'the power conferred by the Constitution in this respect, subject to the two exceptions, that it is local to the city and that it is subject to general laws, is as broad as that of the legislature itself', and the board was vested with the right to exercise within the limits of its jurisdiction, to use the words of the case just cited, 'the entire police power of the state, subject only to the control of general laws'. Necessarily this constitutional provision gives to a county 'the right to determine what police regulations it will prescribe, and the only limitation upon the exercise of the power is, that such regulations shall not be in conflict with the general laws of the state'. (*Ex parte Cheney*, 90 Cal. 617, 620 [27 Pac. 436].)"

In *People* v. *Velarde*, 45 Cal. App. 520, 524 [188 Pac. 59], the following appears: "Thus there is vested in every county police power by direct grant under the Constitution. The power thus conferred is as broad as that vested in the legislature itself, subject to these two exceptions: that it is local to the county or municipality, as the case may be, and is subject to general laws. The board of supervisors . . . [is] therefore, vested with the right to exercise within its jurisdiction 'the entire police power of the state, subject only to the control of the general laws'."

The ordinance here involved satisfies all of these requirements. It has for its purpose the conservation of subterranean waters, a legitimate field for the exercise of the police power. (*Ex parte Elam, supra.*) It is purely local in character and operation, for it seeks to prevent the undue waste of the percolating waters within the county of Orange, thereby conserving said waters and materially benefiting the public welfare. The ordinance does no violence to any general law of the state to which our attention has been directed.

We find no merit in the contention that the ordinance is unreasonable. Petitioner directs this assault particularly at section 3 of the ordinance wherein waste of water from pumping wells is defined. In *Ex parte Elam, supra,* a substantially identical limitation on the waste of water was approved as a reasonable and proper exercise of the police power. The fact that the cited case was dealing with an act (Stats. 1907, p. 122), having to do with the conservation of artesian well water, as distinguished from pumping well water, is of no material consequence.

The charge against petitioner arose out of the flooding of the lands occupied by the West Coast Rod and Gun Club, Ltd., of which organization petitioner was secretary. These lands were flooded with well water pumped thereon for the purpose of attracting wild game and aquatic birds. Petitioner urges that this constitutes a beneficial use of land and water. This contention is sufficiently answered in *Ex parte Elam, supra,* at p. 238, wherein it is said: "It may also be conceded that an exclusive right to hunt upon such preserves has also been held to be a species of property, and injunctions have been issued to prevent interference with the full exercise of such rights. . . . But, while the maintenance of such duck ponds no doubt contributes greatly to the enjoyment of the owner of the hunting privilege, it will scarcely be contended that this is a use of the water which is beneficial to the land. Neither does it follow that because the courts have recognized such exclusive hunting privileges they must support the owners thereof in an encroachment upon another more necessary common right of the public, that of the conservation of the subterranean waters of the state for domestic uses and purposes of irrigation."

It is urged that the flooding of the lands in question had a tendency to free them of alkali. From this it is concluded that the water was used for a beneficial purpose. The record fails to support the contention. We have nothing before us showing that the lands so flooded were impregnated by alkali.

The writ is discharged and the petitioner is remanded to the custody of the sheriff of the county of Orange.

Thompson, J., Curtis, J., Seawell, J., Preston, J., Langdon, J., and Shenk, J., concurred.