[No. C017285. Third Dist. Dec. 28, 1994.]

PETER BALDWIN et al., Plaintiffs and Respondents, v.
COUNTY OF TEHAMA, Defendant and Appellant.

[No. C017301. Third Dist. Dec. 28, 1994.]

BRUCE J. MYERS et al., Plaintiffs and Respondents, v.
COUNTY OF TEHAMA, Defendant and Appellant.

COUNSEL

Nelson D. Buck, County Counsel, Neumiller & Beardslee and Richard M. Archbold for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Walter E. Wunderlich, Assistant Attorney General, Clifford T. Lee, Deputy Attorney General, Thomas M. Fries, County Counsel (Imperial), James Scanlon, County Counsel (Sutter), Stephen Dietrich, Jr., County Counsel (Tuolumne), James A. Curtis, County Counsel (Nevada), Phillip S. Cronin, County Counsel (Fresno), Dwight L. Herr, County Counsel (Santa Cruz) and Antonio Rossmann as Amici Curiae on behalf of Defendant and Appellant.

Kronick, Moskovitz, Tiedemann & Girard, Janet K. Goldsmith, Thomas W. Birmingham, Janis J. Purtee and Andrew B. Pollack for Plaintiffs and Respondents.

Gregory S. Weber as Amicus Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**BLEASE, Acting P. J.**—This case tenders the question whether a county is precluded from the regulation of groundwater because state law has preempted the field. We will conclude that state law, while regulating aspects of groundwater, does not wholly preclude county regulation.

The defendant County of Tehama (Tehama) appeals from a judgment declaring invalid an ordinance by which it regulates the pumping practices and uses of groundwater based upon the finding that the Water Code[1] wholly preempts the field of groundwater regulation.

The plaintiffs, landowners in Tehama who are subject to the ordinance, together with amicus curiae Gregory S. Weber, claim the judgments are supported by provisions of the Water Code and uncodified statutes concerning water use which show that the state has occupied the field of groundwater regulation. They also contend that the ordinance is invalid because its real purpose is to hoard water in derogation of California Constitution article X, section 2.

The County of Tehama, supported by amici curiae state Water Resources Control Board, the Department of Water Resources and Antonio Rossmann, contends that none of the statutes to which plaintiffs point preempt the ordinance and it does not violate California Constitution article X, section 2.

Tehama's contentions have merit and we will reverse the judgment.

### FACTS AND PROCEDURAL BACKGROUND

In light of the generic nature of the claim of preemption, the facts material to resolution of the appeal are few.

On February 4, 1992, Tehama enacted an ordinance with the following material provisions. A permit is required to extract groundwater for the purpose of use on land other than where the extraction occurs. A permit may only be granted if the board of supervisors finds that it will not result in: a withdrawal of more water from the groundwater basin than will be replenished over time ("overdraft"), saltwater intrusion, adverse effects upon the rate of flow of water through the aquifer, adverse effects upon the water table, or the "overdraft" of groundwater based upon the preexisting and reasonably foreseeable beneficial uses of the water on lands within Tehama overlying the aquifer ("mining"). The operation of any well in the county in

---

[1] References to a section are to the Water Code unless otherwise indicated.

a manner that causes a cone of depression in the water table beyond the boundaries of the property is prohibited. If any part of the ordinance is determined to be illegal, it should be severed and the other provisions given effect.

On March 3, 1992, plaintiff Bruce J. Myers and others petitioned for a writ of mandate and for injunctive and declaratory relief against Tehama seeking, among other things, to invalidate the ordinance on the ground that the power of a county to enact an ordinance regulating groundwater had been preempted by state law. On May 27, 1992, Peter Baldwin and certain partnerships filed a similar action. In both actions the plaintiffs alleged that they owned land in Tehama and desired to extract groundwater therefrom for the purpose of use in irrigating land in Colusa County or Glenn County. The two actions were consolidated and, by stipulation, the trial on the matter was bifurcated with the court first to hear and decide the claim of preemption and then the other issues, if necessary.

The trial court decided that Tehama's ordinance is preempted and entered a judgment declaring that it is invalid and enjoining Tehama from enforcing it. Tehama appeals from the judgment.[2]

DISCUSSION

I.

*Introduction*

We first note the principal claim of invalidity. With one exception, which we later consider, the plaintiffs do not claim that any specific provision of the Tehama County ordinance is invalid, on its face or as here applied, because it is in direct conflict with state law. Accordingly, we imply no view on such questions, either under the statutes discussed herein or under any other source of general law. Except as noted, the sole question tendered is whether the field of groundwater is outside the county's police power and for that reason the entire ordinance must fall. That is the question we answer.

---

[2]Recently the California Supreme Court decided in *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 736-744 [29 Cal.Rptr. 804, 872 P.2d 143], that a judgment entered on a bifurcated matter was not of necessity appealable, at least where the remaining portions of the litigation were still pending between the same parties. Accordingly, we asked the parties whether *Morehart* bars an appeal here. The parties argue that *Morehart* is not apposite and the judgment is appealable because it was accepted by the parties as the end of the litigation and no further proceedings are pending. We agree. The alternative would require completed litigation of every potential theory of judicial relief, a major and potentially avoidable cost for the litigants and expenditure of judicial resources.

The state Constitution provides that a city or county "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const. art. XI, § 7.) Despite the sweep of this language it has been asserted that it does not reach certain subjects. (See McBain, The Law and The Practice of Municipal Home Rule 673 (1916); Blease, *Civil Liberties and the California Law of Preemption* (1966) 17 Hastings L.J. 517, 520; cf. Peppin, *Municipal Home Rule in California III: Section 11 of Article XI of the California Constitution* (1944) 32 Cal.L.Rev. 341, 357, fn. 59, 365.) But, as Tehama notes, there is no tenable claim that the subject of groundwater is outside the purview of municipal legislation.

Over 60 years ago, the Supreme Court, in *In re Maas* (1933) 219 Cal. 422 [27 P.2d 373], upheld an Orange County ordinance which limited the uses of water from pumping wells, prohibiting, among other things, the use of such water to flood land for hunting by duck clubs. It was contended that the ordinance "represents an invasion of the police power of the state and that it is without the authority and jurisdiction of boards of supervisors to so legislate." (*Id.* at p. 424.) The Supreme Court rejected that argument, reasoning as follows:

"Legislation with respect to water affects the public welfare and the right to legislate in regard to its use and conservation is referable to the police power of the state. (*Ex parte Elam* [(1907)] 6 Cal.App. 233, 237 [91 Pac. 811].) This does not mean, however, that this phase of the police power is to be exercised exclusively by the state legislature.

". . . . . . . . . . . . . . . . . . . . . . . .

"The ordinance here involved satisfies all of [the] requirements [for county exercise of the police power]. It has for its purpose the conservation of subterranean waters, a legitimate field for the exercise of the police power. (*Ex parte Elam, supra.*) It is purely local in character and operation, for it seeks to prevent the undue waste of the percolating waters within the county of Orange, thereby conserving said waters and materially benefiting the public welfare. The ordinance does no violence to any general law of the state to which our attention has been directed." (*In re Maas, supra,* 219 Cal. at pp. 424-425.)

■ Since the field of groundwater use is within the municipal police power, a local ordinance may be enacted subject to the constitutional constraints applicable to all legislation, unless the power so to do has been preempted by state legislation, i.e., only if it conflicts with general law.

When, as here, the claim is that an entire field has been occupied by state law, wholly precluding municipal regulation, it must be shown that the general law directly or impliedly "covers" the whole of the claimed field of regulation.

Except as noted, the plaintiffs do not claim the Tehama ordinance is in direct conflict with state law. They would imply an occupation of the field from the declared policy of the state or from the pattern and substance of the regulations which the state has enacted. ■ The criteria for such an implication have been articulated as follows. "[W]e may infer an intent to preempt [the field] only if ' "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; [or] (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action . . . ." ' [*Galvan* v. *Superior Court* (1969)] 70 Cal.2d [851] at pp. 859-860 [76 Cal.Rptr. 642, 452 P.2d 930], quoting [*In re*] *Hubbard* [(1964)] 62 Cal.2d [119] at p. 128 [41 Cal.Rptr. 393, 396 P.2d 809]; see also [citations]; cf. Rossmann & Steel, *Forging the New Water Law: Public Regulation of "Proprietary" Groundwater Rights* (1982) 33 Hastings L.J. 903, 937-942.)" (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 708 [209 Cal.Rptr. 682, 693 P.2d 261].)

The state enactments upon which plaintiffs rely do not provide direct coverage of the field of groundwater regulation. In the main they are grants of authority to local public agencies to manage groundwater. The Legislature has eschewed the enactment of substantive law covering this field. (See, e.g., Smith, *Rewriting California Groundwater Law: Past Attempts and Prerequisites to Reform* (1984) 20 Cal. Western L.Rev. 223.) Amicus curiae Gregory S. Weber, in support of plaintiffs' position, candidly concedes that Tehama's "ordinance . . . addresses a regulatory void left by the state legislature's historical reluctance to address the general problems of groundwater resources management."

According to plaintiffs, this void is to be filled by an implication the Legislature has occupied the entire field of groundwater regulation predicated upon the declaration of state policy and a pattern they discern in the grant of statutory authority to manage groundwater to local public agencies coupled with a failure to enact substantive law on the topic.

As we next show, these thin reeds do not individually or collectively support the weighty implication which plaintiffs would make from them.

## II

The plaintiffs first note the policy declared by Water Code section 104: "It is hereby declared that the people of the State have a paramount interest in the use of all the water of the State and that the State shall determine what water of the State, surface and underground, can be converted to public use or controlled for public protection" and section 105: "It is hereby declared that the protection of the public interest in the development of the water resources of the State is of vital concern to the people of the State and that the State shall determine in what way the water of the State, both surface and underground, should be developed for the greatest public benefit."

Plaintiffs, implicitly trading on the repeated references to "the State" in these provisions, suggest that they embody an expression of legislative policy that the subject of groundwater is wholly one of state jurisdiction.[3] This is a claim that the declarations of policy expressly reserve the field of groundwater regulation to the state Legislature.

A flaw in the argument is that preemption cannot be accomplished by a statute which merely declares that a field is preempted. The Legislature may not preempt the exercise of the police power negatively, merely by forbidding its exercise. (See *Ex parte Daniels* (1920) 183 Cal. 636, 641 [192 P. 442, 21 A.L.R. 1172].)

More to the point, there is no expression in these statutes that local authority over groundwater is preempted. The fact that a matter is of statewide concern does not oust municipal governments of police power. "Even in matters of state-wide concern . . . , the city or county has police power equal to that of the state so long as the local regulations do not conflict with general laws." (*Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 176 [339 P.2d 801], citations omitted.)[4] Nor do the references to "the State," a phrase which may include counties. (See, e.g., Cal. Const. art. XI, § 1, subd.

---

[3]At oral argument the plaintiffs asserted for the first time that the field which is preempted is the field of water development—surface and groundwater regulation. They pointed to sections 104 and 105, but they did not develop a legal argument in support of their assertion. Assuming for the sake of argument surface water is so extensively regulated by statutes as to preempt municipal regulation, we see no reason why this shows that the Legislature intended to preempt the regulation of groundwater. The discrete references to "water . . . , both surface and underground" in both section 104 and section 105 belie the implication that the topics are inherently bound together as one field.

[4]For this reason we find no persuasive force in the argument of amicus curiae Weber for preemption based on the following sentence in *Joslin* v. *Marin Mun. Water Dist.* (1967) 67

(a) ["The State is divided into counties which are legal subdivisions of the State."].) ▮▮▮ The declarations in sections 104 and 105 do not facially convey an intent to preclude municipal regulation. They say only that there is a manifest public interest in the water resources of the state.

As Tehama notes, the language of these provisions comes from acts which provided for the investigation by state agencies of water resources. (Stats. 1921, ch. 889, p. 1685; Stats. 1925, ch. 477, p. 1013.) That the sections were meant to preempt local regulation is belied by the code commissioners' assertion that the reenactment in section 104 and 105 "has little operative effect but appears to be a statement of general policy . . . ."[5] (See 68 West's Ann. Wat. Code (1971 ed.) §§ 104 and 105, pp. 147-149.) At the time of their enactment the raging water law controversy concerned the claim of riparian owners to unlimited vested rights superior to those of prior appropriators. (A useful summary of the history is provided in *Ivanhoe Irr. Dist.* v. *All Parties* (1957) 47 Cal.2d 597, 620-624 [306 P.2d 824].) The declaration of a paramount interest in the state's water resources, both surface and underground, is addressed to claims that riparians, private persons, could thwart the orderly development and conservation of the water resources of the state.

Sections 104 and 105 furnish no support for a claim of preemption. (See Rossmann & Steele, *Forging the New Water Law: Public Regulation of "Proprietary" Groundwater Rights* (1982) 33 Hastings L.J. 903, 940; Weber, *Forging a More Coherent Groundwater Policy in California: State and Federal Constitutional Law Challenges to Local Groundwater Export Restrictions* (1994) 34 Santa Clara L.Rev. 373, 404, hereafter *Groundwater Export Restrictions*.)

### III

The plaintiffs next suggest that the field of groundwater regulation is occupied by implication drawn from the statutes which grant local agencies

Cal.2d 132, 140 [60 Cal.Rptr. 377, 429 P.2d 889]: "Although as we have said, what is a reasonable use of water depends on the circumstances in each case, such an inquiry cannot be resolved *in vacuo* isolated from statewide considerations of transcendent importance." The presence of statewide considerations does not advance a claim of preemption unless there is a conflict between them and local legislation.

[5]As plaintiffs note, the code commissioners also observe: "While little statutory regulation exists as to 'ground' water, as distinguished from water in streams whether surface or underground, there may be some value in preserving these assertions of jurisdiction on the subject." However, we discern no indication in this that the reservation of such "jurisdiction" is incompatible with concurrent jurisdiction of municipalities.

authority to regulate groundwater.[6] They draw the negative inference that only such powers may be exercised as are granted or permitted under these statutes. They claim that "general law [is] couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action . . . ." (*Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859-860 [76 Cal.Rptr. 642, 452 P.2d 930].)

The argument is not supported by the statutes. To show this we address them individually, in the chronological order of enactment, and then collectively.

## A.

## 1.

■   The plaintiffs first look to several uncodified enactments which grant limited powers of groundwater regulation to specifically identified special districts, e.g., The Sacramento County Water Agency Act (Stats. 1985, ch. 848, p. 2704 Deering's Wat.—Uncod. Acts (1970 ed.) Act 6730a, p. 342.) The claim founded on these statutes goes nowhere.

As plaintiffs themselves observe, these are "special acts." They may be enacted only where *no* "general statute can be made applicable." (Cal. Const., art. IV, § 16, subd. (b); see, e.g., *American Riv. Flood Control Dist.* v. *Sweet* (1932) 214 Cal. 778, 780 [7 P.2d 1030].) Since a special act is *not* a "general statute," or *general law*, no claim of preemption founded upon a "conflict with general laws" can arise.[7]

Nonetheless, we note that there are also general laws, allowing the formation of local districts with powers that may impinge upon the powers of a city or county, to which the plaintiffs' argument might be adapted. (See, e.g., Henley, *The Evolution of Forms of Water Users Organizations in California* (1957) 45 Cal.L.Rev. 665.) Some of these districts are accorded limited powers over groundwater, e.g., groundwater replenishment districts

---

[6]The plaintiffs request that we take judicial notice of a bulletin of the Department of Water Resources for the purpose of the purported references therein to the state's grant to local agencies of limited authority to deal with groundwater basins. The proper manner of demonstrating the existence and nature of such grants of authority is citation to the appropriate statutes. The plaintiffs' request is denied.

[7]As noted, the constitutional limitation upon the power of the Legislature to enact a special statute arises under California Constitution article IV, section 16. We have no occasion to consider an ostensible conflict between a special statute, adopted pursuant to article IV, section 16, and an ordinance adopted by a city and county pursuant to article XI, section 11. (See generally, *Petition East Fruitvale Sanitary Dist.* (1910) 158 Cal. 453, 458 [111 P. 368].)

and municipal water districts are authorized to institute actions or proceedings to adjudicate water rights (§§ 60222, 60230, 71757, 74641) and water conservation districts are authorized to litigate water rights and require registration and monitoring of extraction facilities for purposes of imposing groundwater use charges. (§§ 74641, 75540-75642.)

However, we discern no occupation of the field of groundwater regulation in these enactments; there is no implication to be drawn from them that the field will bear no other or further local legislation. Local districts established by statute inherently differ in kind from municipal corporations. (See, e.g., *Trimont Land Co.* v. *Truckee Sanitary Dist.* (1983) 145 Cal.App.3d 330, 342-343 [193 Cal.Rptr. 568].) They draw their authority from the enactments which create them. They are created for limited purposes, exercise limited powers, are far less visible and significant in the political scheme of things than municipal corporations, and are less likely to accurately reflect the will of the populace. The fact that the Legislature limits the power assigned to them suggests little or nothing about the exercise of power by municipalities, which draw their powers from the California Constitution.

## 2.

The plaintiffs next seek sustenance from sections 1215-1222, which address the export of water (including groundwater), "reasonably required to supply the beneficial needs of the protected area," from specified drainage areas including the Sacramento River Basin. They argue that these provisions support their claim of implied preemption and are also in direct conflict with the Tehama ordinance. Specifically, the plaintiffs look to section 1220, which provides:

"(a) No groundwater shall be pumped for export from within the combined Sacramento and Delta-Central Sierra Basins, as defined in Department of Water Resources' Bulletin 160-74,[8] unless the pumping is in compliance with a groundwater management plan that is adopted by ordinance pursuant to subdivision (b) by the county board of supervisors, in full consultation with affected water districts, and that is subsequently approved by a vote in the counties or portions of counties that overlie the groundwater basin . . . .

"(b) Notwithstanding any other provision of law, a county board of supervisors whose county contains part of the combined Sacramento and

---

[8]Amici curiae state Water Resources Control Board and the Department of Water Resources ask that we take judicial notice of the bulletin for the purpose of showing that Tehama, Glenn, and Colusa Counties are located within the Sacramento River Basin. This request is granted.

Delta-Central Sierra Basins may adopt groundwater management plans to implement the purposes of this section.

"(c) A county board of supervisors shall not exercise the powers authorized by this section within the boundaries of another local agency supplying water to that area without the prior agreement of the governing body of that other local agency."

The authority granted by this section does not restrict the substance of a groundwater management plan. The plaintiffs argue that section 1220 grants Tehama, within the affected area, authority to manage the groundwater basin subject to a prescribed procedure which Tehama "chose to ignore." They imply that section 1220 confers a general power to manage groundwater upon counties in the affected area and that Tehama, as such a county, is meant to be confined to the specified procedure in the exercise of *any* power over groundwater management.

However, the subject of section 1220 is not groundwater management as such. Its purpose is to provide to counties the power to grant exceptions to the Legislative prohibition on the export of groundwater outside of the protected Sacramento and Delta-Central Sierra Basins. A county has no power to export water within the statutory prohibition without a statutory exception. The fact that the statute provides for an exception and confers authority to act for this purpose does not imply the view that legislative authorization is otherwise required for a county to enact an ordinance on the subject of groundwater. There is no conflict because there is no claim that Tehama's ordinance authorizes exports of water outside of the Sacramento Basin.

Section 1220 does contain significant procedural prerequisites for the exercise of the authority granted. These are in aid of the purpose to be served—overcoming the export ban. The statute does not otherwise address the subject of groundwater management. It concerns permitting out-of-basin transfers and to that end imposes procedural requirements. It does not preclude municipalities from the management of groundwater in other respects.

■ Plaintiffs also claim that provisions concerning export of water in the Tehama ordinance duplicate section 1220 because the ordinance "imposes additional requirements on intrabasin transfers" and the ordinance is to that extent preempted. We do not understand how this counts as a duplication claim. The doctrine of preemption by duplication is largely confined to penal ordinances which duplicate state law and present the problem that because of

double jeopardy ". . . a conviction under the ordinance will operate to bar prosecution under state law for the same offense." (*People* v. *Orozco* (1968) 266 Cal.App.2d 507, 511, fn. 1 [72 Cal.Rptr. 452, 32 A.L.R.3d 1429] quoted with approval in *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 292, fn. 12 [219 Cal.Rptr. 467, 707 P.2d 840]; also see Blease, *Civil Liberties and the California Law of Preemption, supra*, 17 Hastings L.J., at pp. 519-524 and cases cited therein.) Since state criminal law does not prohibit *intra*basin transfers, plaintiffs' specific claim of duplication fails categorically at the outset. (See *Cohen* v. *Board of Supervisors, supra*, 40 Cal.3d at p. 292.)

At oral argument plaintiffs suggested a different duplication claim, partial duplication because state law prohibits export outside the Sacramento Basin and the ordinance requires a permit for all exports outside the county of Tehama which includes exports outside the Sacramento Basin. This claim is also unpersuasive.

If the Tehama ordinance expressly said it was inapplicable to proposed exports outside the Sacramento Basin because such a transfer is prohibited by statute the plaintiffs' partial duplication could not be maintained. But that is implicit in the ordinance; it presupposes the backdrop of existing statutes and must be read in light of and in harmony with them. (See *In re Murphy* (1900) 128 Cal. 29, 31 [60 P. 465], which upheld an ordinance which prohibited all games of chance played for money: "From this comprehensive description we must exclude those condemned by the statute.")

We conclude that sections 1215-1222 furnish no support for plaintiffs' claims of preemption, either by implication or under the theory of duplication.

### 3.

■ The plaintiffs next point to sections 10750-10753.9, which authorize "local agencies" (local public agencies that provide water service, § 10752, subd. (g)) to adopt a groundwater management plan and rules and regulations to enforce such a plan.[9] The exercise of this statutory power is subject to a procedural regime under which the agency must adopt a resolution of

---

[9]The implication in the arguments of the parties at trial is that Tehama does not provide water service. We have no evidence whether there are counties that in fact provide water service. Nor are we informed of any law which compels them to perform that service. Hence, we conclude that the definition of local agency in section 10752 does not include counties *qua* counties.

In 1993 section 10753 was amended to add to the list of those authorized to adopt a groundwater plan local public agencies which do not provide water service but which provide flood control, groundwater management, or groundwater replenishment and those local public

intention to adopt a plan, hold hearings on the adoption of the plan, and may not adopt a plan if there is a protest filed on behalf of landowners holding more than 50 percent of the assessed valuation in the service area of the agency. (§§ 10753.2-10753.6.) It is also subject to the requirement that the portion of the groundwater basin to be governed by the plan not be "subject to groundwater management pursuant to other provisions of law or a court order, judgment, or decree . . . ." (§ 10753.)[10] A limitation on groundwater extraction pursuant to such a plan cannot be imposed unless the agency determines after study that groundwater replenishment or other sources of supply are insufficient or infeasible alternatives. (§ 10753.8, subd. (c).)

Again, for the reasons previously given relating to the formation of local water agencies, we discern no coverage of the field of groundwater regulation in sections 10750-10753.9 and no implication that the field will bear no other or further local action. These statutes manifest a purpose to induce local water agencies to address groundwater management. Since many of these agencies are not municipalities and have no reservoir of police power, they are limited to powers specifically conferred by statute. (See, e.g., *Trimont Land Co.* v. *Truckee Sanitary Dist., supra,* 145 Cal.App.3d at pp. 342-343.) The limitations imposed on the grant of such a generally conferred power are drawn to satisfy concerns that could arise about the least democratic, representative, and responsive of the group.

## B.

There is also no implication of occupation of the field to be drawn from these statutes viewed collectively. They do not show that " ' "the

agencies which are formed pursuant to the Water Code for the principal purpose of providing water but which do not yet do so. It does not appear, even under this expansion, that every county is—by definition—included within the list of entities that could exercise power under these statutes.

[10]Section 10750.6 provides that these statutes are to have no effect on the authority of a local agency or watermaster to manage groundwater pursuant to other provisions of law. Tehama and Department of Water Resources suggest that this is a legislative recognition of county police power to enact groundwater management ordinances, citing inter alia, *People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 486 [204 Cal.Rptr. 897, 683 P.2d 1150]. However, since a county is not of necessity a "local agency" within the statutory definition (fn. 11, *post*), the implication of such recognition is weak.

Amici curiae state Water Resources Control Board and the Department of Water Resources request that we take judicial notice of Assembly Bill No. 3567, 1983-1984 Regular Session and the Governor's veto message on that bill. They argue that the bill was a precursor of the enactment of sections 10750-10753.9, that the Governor vetoed the bill because of concerns that it might lead to an implication of preemption, and that the references to "other provisions of law" in several of the later enacted statutes is attributable to an intent to dispel an implication of preemption. The argument invites us to read legislative history tea leaves; we decline the invitation. Assembly Bill No. 3567 similarly stated that its provisions were in addition to and not a limitation on any powers of a local agency otherwise granted by law. The request for judicial notice is denied.

subject matter [of groundwater regulation] has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern [or that] the subject matter [of groundwater regulation] has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action . . . ." ' " (*Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at p. 708.)

"The fact that there are numerous statutes dealing with [the subject] does not by itself show that the subject . . . has been completely covered so as to make the matter one of exclusive state concern." (*Galvan* v. *Superior Court,* 70 Cal.2d at pp. 861-863.) The test of occupation is whether the nature and extent of the coverage of a field is such that it could be said to display a patterned approach to the subject. (*Id.* at pp. 861- 863.) We discern no such pattern.

No implication can be drawn that the Legislature intended to impair the constitutional exercise of the police power over groundwater because it has granted limited authority over groundwater to local agencies which draw their power solely from state legislation. Nor can any pattern of regulation be seen in the restrictions of section 1220 on the export of water from the Sacramento Basin.

The converse implication is more naturally made. There is a common thread in these statutes which suggests that problems of groundwater management should be addressed on the local level.[11] There is no implication of a policy in these statutes that legislative action to foster local response is comprehensive, i.e., that the mechanism for local response to the problem is to be limited to the statutory schemes identified by the plaintiffs.

### IV

■ Plaintiffs contend that we should uphold the judgment nonetheless, because the "real purpose [of the ordinance] is to hoard water [the county] does not currently need in contravention of the constitutional mandate [of California Constitution article X, section 2] that all water be put to its maximum beneficial use."[12] They point to a recital that one of the purposes of the ordinance is the enhancement of enlarged and new agricultural

---

[11]This approach belies the argument of amicus curiae Weber that preemption is required on policy grounds because the state cannot tolerate the possibility of regulatory regimes which vary by county. The policy implicit in the series of statutes authorizing local public agencies to engage in groundwater management is to the contrary.

[12]Article X, section 2 of the California Constitution is as follows: "It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water

enterprise within the county.[13] However, this is a facially innocuous statement of purpose.

The only matter which the plaintiffs identify in their argument is the recital that the ordinance "tend[s] to enhance the likelihood of enlarged and/or new agricultural enterprise . . . ." On its face this statement of purpose poses no conflict with the constitution. Plaintiffs apparently ask us to infer from the recital that the Tehama Board of Supervisors was motivated by a desire to "hoard" water as a means to accomplish the end set forth. However, the inference is not compelled by the recital and as a general rule we do not probe into lawmakers' motivations. (See, e.g., *County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721, 726-728 [119 Cal.Rptr. 631, 532 P.2d 495].) Our concern is with the operation of the ordinance.

Obviously, plaintiffs' constitutional claim could be addressed to the operative provisions of the ordinance which prohibit "mining" as defined by the ordinance. As related, "mining" means the withdrawal of more water from the groundwater basin than will be replenished over time in light of preexisting and reasonably foreseeable beneficial uses of the water on lands within Tehama.[14] Plaintiffs have eschewed this argument, perhaps because focusing their claim in this fashion would reveal that the relief warranted, if

---

resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water. Riparian rights in a stream or water course attach to, but to no more than so much of the flow thereof as may be required or used consistently with this section, for the purposes for which such lands are, or may be made adaptable, in view of such reasonable and beneficial uses; provided, however, that nothing herein contained shall be construed as depriving any riparian owner of the reasonable use of water of the stream to which the owner's land is riparian under reasonable methods of diversion and use, or as depriving any appropriator of water to which the appropriator is lawfully entitled. This section shall be self-executing, and the Legislature may also enact laws in the furtherance of the policy in this section contained."

[13]In a recital clause the ordinance asserts that the county is economically depressed and must exercise its police power to ensure that existing agricultural endeavors are not harmed or discouraged to preserve employment. It then says: "Additionally, regulation tending to enhance the likelihood of enlarged and/or new agricultural enterprise appears to be a reasonably prudent measure to provide employment to some of those persons who have lost employment or have become underemployed because of the collapsing timber industry."

[14]Here again, we imply no view on the merits of plaintiffs' claim if applied to these particular provisions of the ordinance. Whether legislation barring present use of water in order to permit future use by the area of origin of water necessarily conflicts with article X, section 2 is not so simple as plaintiffs' cursory argument supposes. (See generally, e.g., Note, *State Water Development: Legal Aspects of California's Feather River Project* (1960) 12

it has merit, would be the severance of the no "mining" provisions from the ordinance. That would not suffice to uphold the judgment invalidating the entire ordinance. None of the other points raised in the briefs warrant textual discussion.[15]

### DISPOSITION

The judgment is reversed. Tehama shall recover its costs of this appeal.

Sims, J., and Morrison, J., concurred.

Respondents' petition for review by the Supreme Court was denied March 17, 1995. Mosk, J., and Baxter, J., were of the opinion that the petition should be granted.

---

Stan.L.Rev. 439, 450-455, discussing county of origin and watershed protection statutes; *Groundwater Export Restrictions, supra,* 34 Santa Clara L.Rev. at pp. 419-431.) Moreover, it is not certain that Tehama would apply the no "mining" provision to prohibit present exportation of water as that may not be the only means of advancing the proclaimed interest in "reasonably foreseeable beneficial uses of water on lands within Tehama."

[15]Plaintiffs also request that we take judicial notice of rulings by superior courts in two other cases concerning groundwater regulation by counties. This misunderstands the doctrine of precedent. (See, e.g., Cal. Rules of Court, rule 977.) Plaintiffs' request for judicial notice is denied.